

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRUS YERBY, et al.,

    Plaintiffs,

v.                                                       Civil Action No. 3:19-cv-393

CITY OF RICHMOND, VIRGINIA,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiffs' MOTION FOR CONDITIONAL CERTIFICATION AND COLLECTIVE NOTICE (ECF No. 14) (the "Motion for Conditional Certification"). On behalf of themselves and others similarly situated, Plaintiffs Tyrus Yerby and Adrienne Webster ("Plaintiffs") brought this action to recover unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In their Motion for Conditional Certification, the Plaintiffs request that the Court conditionally certify a collective class action and transmit notice to putative class members. ECF No. 14. In their supplemental briefing (ECF No. 30), the Plaintiffs ask for the application of equitable tolling to extend the statute of limitations. After consideration of the Motion for Conditional Certification, the supporting, opposing, reply, and supplemental briefing, as well as the oral arguments, the Court will grant the Motion for Conditional Certification,

will deny the Plaintiffs' motion for equitable tolling, will approve the Plaintiffs' request to provide notice to putative class members, and will order a sixty-day notice period for the prospective class members to opt-in to the class.

**BACKGROUND**

**A. General Factual Background**

Plaintiffs, and the putative class members, are employed by the City of Richmond (the "City") in public facing roles within the Department of Finance that require them to respond to, communicate with and/ or serve the public at call centers, "One Stop" offices, and/or cashier stations. ECF No. 1 at ¶ 11. The gravamen of the case is that the City requires the Plaintiffs, and the putative class members, to work more than forty fours per week without receiving overtime compensation. See id. ¶¶ 1, 2, 13-14, 21-22. In particular, it is alleged that Department of Finance employees were: (1) required to work before 8:00 AM and after 5:00 PM to complete their daily job responsibilities; and (2) were regularly required to work during their lunch breaks. Id. Plaintiffs allege that, in so doing, the City violated the FLSA by failing to pay overtime compensation; and they seek monetary damages for all unpaid overtime compensation, liquidated damages, and injunctive relief. Id. at 10-11.

**B. Procedural Background**

The Complaint alleges one count under Section 216(b) of the FLSA. ECF No. 1 at ¶¶ 9-10. That provision relies on Section 207 of the FLSA, 29 U.S.C. § 207, which states that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). In support of the Motion for Class Certification, the Plaintiffs offered the declaration of Tyrus Yerby and Yerby's 2017 redacted pay stubs, which taken together, were meant to establish that employees within the Department of Finance frequently worked in excess of forty hours a week but were denied compensation for these excess hours in connection with a department wide policy denying overtime pay. ECF Nos. 15-1, 15-2.

The City responded that the members of the proposed class are not similarly situated, and that they are not subject to a common policy or plan because Department of Finance employees are not regularly denied overtime pay. ECF No. 18 at 2-3. In support of its position, the City tendered the affidavit of Mimi Terry, the Deputy Director of Finance for the City. See generally ECF No.

3

18-1. Terry's affidavit asserts that Yerby's job would not require him to perform work before 8:00 AM or after 5:00 PM, thereby creating a fact dispute on that point. Id. at ¶ 9. Terry's affidavit also asserts that Webster's job duties do not require her to work before 8:00 AM and after 5:00 PM, thereby creating a factual dispute. Id. at ¶¶ 12-13. Terry does acknowledge that some Department of Finance employees have to work before 8:00 AM and after 5:00 PM. When that happens, says Terry, the employees are paid overtime or their "time is flexed within the work week." Id. at ¶ 17. And, for the employees that do work before 8:00 AM, this work is "made up at lunch or by leaving early." Id.

In reply, the Plaintiffs offer no additional evidence and argued that because only minimal evidence is required at the conditional certification stage of the case, ECF No. 22 at 3-6, they have met the requirement for conditional certification of the putative class. Id.

After oral argument on the issue of conditional certification, and, taking into account the limited facts that the parties had presented, the Court ordered limited discovery on the issue of whether Plaintiffs and putative class members are "similarly situated" for purposes of the Motion for Conditional Certification. ECF No. 25. That discovery included (1) the City's production of sample pay, email, phone and computer log data for two unnamed employees within each Department of Finance unit; and

4

(2) depositions of two former Department of Finance Managers, Angela Morris and Catherine Badley. Id. Upon conclusion of the supplemental discovery, the parties submitted supplemental briefs. In their supplemental memorandum in support of the Motion for Conditional Certification, the Plaintiffs limited the scope of their proposed conditional certification class to all full time, non-exempt employees in the following units within the Department of Finance: Delinquent Collections Unit, Cash Operations Unit, Business Unit, Tax Enforcement Unit, Personal Property Unit, Real Estate Unit, and Audit Unit.[1] ECF No. 30 at 2-3. The City, in its supplemental response, contends that the evidence presented supports conditional certification for only the Cash Operations Unit, the Delinquent Collections Unit and the Business Unit. ECF No. 31 at 2. Thus, the issue is whether the similarly situated requirement is satisfied for employees of the Tax Enforcement, Personal Property, Real Estate, and Audit Units.

## DISCUSSION

### A. Legal Framework

The FLSA protects employees from being subjected to "prohibited employer conduct." Houston v. URS Corp., 591 F. Supp.

---

[1] While the Plaintiffs initially requested employees within the Department of Finance's Settlement Unit as part of the proposed class, they no longer seek to include these employees. ECF No. 30 at 2.

5

2d 827, 831 (E.D. Va. 2008). Prohibited conduct includes requiring employees to work overtime without being paid overtime wages. 29 U.S.C. § 207(a)(1).

Section 216(b) of the FLSA provides the legal framework by which a plaintiff may bring a collective action against an employer on behalf of himself and a group of "similarly situated" employees for violations of the FLSA. 29 U.S.C. § 216(b). A collective action allows for the "efficient resolution in one proceeding of [claims involving] common issues of law and fact . . ." Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

As a general rule, certification of a class under the FLSA requires that: (1) the plaintiffs in the class are "similarly situated;" and (2) the plaintiffs included in the class "opt in" by filing with the Court their consent to the suit. Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562 (E.D. Va. 2006). Section 216(b) of the FLSA does not define "similarly situated," and the Fourth Circuit has not yet articulated a standard for determining whether potential plaintiffs are similarly situated for purposes of certifying a collective action. Id. ("[T]he Fourth Circuit has yet to directly apply a standard to an examination of whether a class of plaintiffs are similarly situated within the context of FLSA.").

However, it is generally accepted that assessment of the "similarly situated" requirement proceeds in two stages: (1) the

notice stage and (2) the decertification stage. See, e.g., Davis v. BT Americas, Inc., No. 2:16-cv-206, 2016 WL 7131981, at *2 (E.D. Va. Nov. 9, 2016); Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009); Meeker v. Med. Transport, LLC, No. 2:14cv426, 2015 WL 1518919, at *2 (E.D. Va. Apr. 1, 2015).

During the first stage, commonly referred to as the "conditional certification" or "notice" stage, the court determines whether plaintiffs and potential class members' claims are sufficiently similar to send out initial notice of the action. Choimbol, 475 F. Supp. 2d at 562. This initial inquiry proceeds under a "fairly lenient standard" that requires only "minimal evidence." Id. Thus, at this stage, the plaintiffs must demonstrate that "they and potential plaintiffs together were victims of a common plan or policy" that violated FLSA. Meeker, 2015 WL 1518919, at *3. "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" Houston v. URS Corp., 475 F. Supp. 2d 871, 831 (E.D. Va. 2008) (quoting Choimbol, 475 F. Supp. 2d at 563); Clinton v. Gov't Employees Ins. Co., No. 2:16cv430, 2017 WL 3025558, at *2 (E.D. Va. July 14, 2017). More particularly, at the first state, the Plaintiffs must show that "there are persons sufficiently similarly situated to Named Plaintiffs to raise similar legal issues as to coverage, exemption, or nonpayment of

7

overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." Stone v. SRA Int'l, Inc., No. 2:14cv209, 2014 WL 5410628, at *2 (E.D. Va. Oct. 22, 2014) (internal quotations omitted); Choimbol, 475 F. Supp. 2d at 562.[2]

This case is at the first stage (the "notice" or "conditional certification" stage). To achieve conditional certification, plaintiffs must make two showings. Meeker, 2015 WL 1518919, at *3. First, plaintiffs must "make a preliminary factual showing that a similarly situated group of potential plaintiffs exists." Id. (quoting Bernard v. Household Int'l, Inc., F. Supp. 2d 433, 435 (E.D. Va. 2002)). Second, plaintiffs must demonstrate that they and other potential plaintiffs together were "victims of a common policy or plan that violated the law." Id. (internal quotations omitted). However, not all plaintiffs and putative class members are required to have identical situations, rather "[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to the similarly situated determination." Id. (citing De Luna-Guerrero v. N.C. Grower's Ass'n, 388 F. Supp. 2d 649, 654 (E.D.N.C. 2004)). And,

---

[2] Once discovery on the merits has been completed, a defendant may move to decertify the conditionally certified class. In the so-called "decertification" stage, the Court, applying a "heightened fact specific standard," determines whether the plaintiffs are similarly situated. Choimbol, 475 F. Supp. 2d at 563.

8

although the burden is on the plaintiff to demonstrate that notice is appropriate (i.e., that conditional certification should be granted), the burden is not an onerous one. D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995).

**B. Analysis**

The foregoing principles guide the resolution of the Motion for Conditional Certification. As narrowed following limited discovery, the requested conditional certification is for employees employed in seven units within the Department of Finance, more particularly:

> All current and former City of Richmond Department of Finance employees employed any time on or after May 24, 2016 who are/ were:
>
> (i) Paid an hourly wage; and
>
> (ii) Employed in one or more of the following units: Cash Operations Unit (Cashiers); Delinquent Collections Unit; Audit Unit; Business Unit (currently called "Customer Service Unit"); Tax Enforcement Unit, Personal Property Unit, or Real Estate Unit; and
>
> (iii) Required to be present and working before or after the City's public office hours of 8:00 am to 5:00 pm and/or during their daily deducted "lunch breaks"; and
>
> (iv) Prohibited from recording more than eight (8) hours of work per day and/or more than forty (40) hours of work per work week, regardless of the number of hours actually worked in that particular day or week; and

(v) Denied overtime pay for time worked over 40 hours in any given work week.

ECF No. 30 at 2-3. In other words, the Plaintiffs' proposed class consists of all full time, non-exempt employees in the Delinquent Collections Unit, Cash Operations Unit, Business Unit, Tax Enforcement Unit, Personal Property Unit, Real Estate Unit, and Audit Unit. Id. at 2. The City takes the view that conditional certification should only extend to employees in the Cash Operation Unit, Delinquent Collections Unit and the Business Unit. ECF No. 31 at 2.

### (i) Common Plan or Policy

The Plaintiffs bear the burden of proving that the proposed class was subject to a common plan or policy in violation of the FLSA. The Plaintiffs contend, and have offered evidence, which if believed, tends to show, that the City engaged in a practice of requiring unpaid off-the-clock work by regularly prohibiting Finance Department employees from recording their hours spent working per week (the "40-Hour Week Pay Scheme"). ECF No. 30 at 12. More specifically, the Plaintiffs have offered evidence that the City's policy is such that the Plaintiffs and other similarly situated employees were directed not to: "(1) enter more than eight (8) hours per work day into RAPIDS (the City's timekeeping system); (2) enter more than forty (40) hours per work week into RAPIDS;

10

and/or (3) enter any time for work they performed during their one-hour lunch break period." ECF No. 22 at 2.

The City argues that the Plaintiffs have not provided credible evidence of a common policy to deny overtime. ECF No. 31 at 9-10. The thrust of the City's position focuses on the credibility of the Plaintiffs' evidence. The issue of credibility is not well-suited for resolution at the notice stage of the proceeding because the record is only lightly developed.

Moreover, it is rather well-settled that an "unwritten policy of discrimination may violate the FLSA if affidavits show that overtime decisions, made by individual supervisors, were 'not the product of happenstance or outlier instances of rogue behavior' but were themselves in keeping with company policies executed on a consistent basis." Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2012 WL 489216, at *8 (E.D. Va. Jan. 3, 2012) (quoting MacGregor v. Farmers Ins. Exch., 2011 U.S. Dist. LEXIS 80361, at *10 (D.S.C. July 13, 2011)). A review of the Complaint, the depositions taken to date, and the declarations offered leads the Court to conclude that the Plaintiffs have made the requisite showing of a common plan or policy to deny overtime pay throughout the City's Department of Finance. The testimony of Catherine Badley, a former Business Unit manager, and Angela Morris, a former Tax Enforcement manager, taken together with the Department of Finance's organizational chart permit the preliminary conclusion

11

that the decisions to deny or limit overtime pay were not mere "happenstance" or "outliers" but were consistently made by supervisors and management throughout the Department of Finance. ECF No. 30 at 3-7. In addition, the sample employee data from the Personal Property, Real Estate, and Audit Units, which demonstrate work performed before 8:00 AM, during recorded lunch breaks, and after 5:00 PM, are consistent with the direct testimony and the evidence that decisions to deny overtime pay were made throughout the Department of Finance. Under the lenient evidentiary requirements at the conditional certification stage, this evidence is sufficient to meet the Plaintiffs' burden of establishing a uniform policy.

The City seeks to counter the Plaintiffs' showing by pointing to conflicting statements in the Plaintiffs' evidence. ECF No. 31 at 10 ("The testimony of Morris directly contradicts Badley's testimony and is not consistent with a policy to not permit employees to enter their actual time worked and pay overtime."). It is possible that, at a later point in the case, discovery on the merits may support the City's contention, but reviewing and deciding on the allegedly conflicting evidence "would amount to this Court resolving factual disputes between parties that go to the merits of Plaintiffs' case." Hargrove, 2012 WL 489216, at *16. The Court declines that invitation. At this point in the proceeding, there is sufficient evidence of a uniform policy within

12

the Department of Finance for the Court to conclude that Plaintiffs have met their burden to show preliminarily that they, and the potential class members, were subject to a uniform policy or practice that violated the FLSA.

### (ii) Similarly Situated

Plaintiffs must also demonstrate that they are similarly situated to the potential class members whom they seek to represent. At this stage, the Court is limited to evaluating only whether Plaintiffs have demonstrated that "there are persons sufficiently similarly situated to Named Plaintiffs to raise similar legal issues as to coverage, exemption, or nonpayment of overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." Clinton, 2017 WL 3025558, at *3 (internal quotations omitted). Thus, to be considered "similarly situated," the Plaintiffs must prove that there is sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that these issues can be adjudicated without consideration of facts unique or particularized to each class member.

To support their argument on substantial similarity, the Plaintiffs point to the following facts, among others, as probative of their assertion that the Plaintiffs and employees are "similarly situated:"

13

- all putative plaintiffs worked directly to serve taxpayers within the same location at City Hall;

- without regard to their "exact job titles, duties, or schedules, all putative plaintiffs were required to serve the public" between the hours of 8:00 AM and 5:00 PM;

- all putative plaintiffs' work time and hours were subject to the same timekeeping policies and RAPIDs timekeeping system, as dictated by upper management; and

- all putative plaintiffs were denied overtime pay pursuant to the City's policies.

ECF No. 30 at 14-16.

The City argues generally, and rather vaguely, that the proposed class is not similarly situated because adjudication of the claims "requires consideration of facts specific to each member." ECF No. 31 at 9. However, the City does little to explain why that is so or to refute the showing made by the Plaintiffs.

Moreover, courts within the Eastern District of Virginia have found groups of employees to be similarly situated when the potential class includes members that are in the same positions or perform essentially the same jobs. See, e.g., Lafleur v. Dollar Tree Stores, No. 2:12cv363, 2012 WL 4739534, at *10 (E.D. Va. Oct. 2, 2012) (finding that the plaintiffs made the requisite showing

14

for conditional certification by first establishing that the plaintiffs and those similarly situated "worked at Dollar Tree locations performing the same job duties and functions and rewarded the same compensation based on nationwide Dollar Tree policies"); Allen v. Cogent Communications, No. 1:14cv459, 2014 WL 4270077, at *5 (E.D. Va. Aug. 28, 2014) (finding conditional certification where "[p]laintiffs have alleged that the duties, responsibilities, and activities of the potential plaintiffs and themselves are the same"); Houston, 591 F. Supp. 2d at 833 ("As other courts have found, plaintiffs are similarly situated to a class when they raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." (internal quotations omitted)).

Of course, in assessing conditional certification, it is not imperative that the job duties of the members of the proposed class or the ways in which the potential class members complete their jobs be identical. See, e.g. Houston, 591 F. Supp. 2d at 833 (finding that the differences in the class members' skill-level, efficiency, timed work, scheduling preferences, and other decisions did not defeat conditional certification). And, in Earl v. Norfolk State University, the plaintiffs, salaried male teaching faculty at a university, did not perform the same duties

or functions. No. 2:13cv148, 2014 WL 6608769, at *2 (E.D. Va. Nov. 18, 2014). Notwithstanding this, the court granted conditional certification because the plaintiffs and those similarly situated were able to provide "a sufficient factual basis for the Court to conclude that Plaintiff has made a modest factual showing that [the university] evaluates teaching faculty using the same criteria regardless of department, and that such evaluation process affects pay." Id. at *2.

It is true, as the City says, that the proposed class consists of members from different units within the Finance Department, and that there are some differences within the proposed class with respect to the tasks performed by the employees in each of the units. However, the Plaintiffs have produced evidence through the City's telephone records, email records, and financial database that employees in each of the units worked before 8:00 AM, after 5:00 PM, and during their lunch break, and that they were prohibited from recording the time they worked in some manner. Thus, there is sufficient evidence to allow the conclusion at this stage of the proceedings that the employees in those units were subject to the same policy that affected their pay without regard to the specific unit in which those employees worked. Accordingly, the employees can be considered similarly situated under the FLSA. An individual inquiry into each position within the Finance Department is unnecessary at this stage to determine whether, based

on the position's classification and job duties, the employee is owed overtime pay under the FLSA. To the extent that further discovery reveals that any additional opt-in plaintiffs are too dissimilar, or that they are otherwise not similarly situated, the City may move to decertify the class following the close of discovery. Choimbol, 474 F. Supp. 2d at 565.

### C. Equitable Tolling

Plaintiffs request equitable tolling of the FLSA's statute of limitations from the date of their filing of the Complaint to the end of the sixty-day notice period because of the litigation posture of the case. ECF No. 30 at 17. The Fourth Circuit has recognized three grounds on which equitable tolling is appropriate: (1) where a party has actively pursued his case by filing a defective pleading within the limitation period; (2) where a party has missed a deadline through misconduct of his adversary; and (3) where extraordinary circumstances beyond the party's control make it impossible to file a timely claim. See, e.g., Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005) (citing Irwin v. Dep't of Veteran's Affairs, 498 U.S. 89 (1990)).

The Plaintiffs have failed to make a sufficient showing to justify equitable tolling. Defective pleadings are not at issue in this case nor is there any evidence of misconduct or misrepresentation by the City preventing Plaintiffs from pursuing

their case. Given the lack of impermissible conduct on behalf of the City, the only potential ground for relief lies with the "extraordinary circumstances" rationale for equitable tolling. However, Plaintiffs have not articulated extraordinary circumstances justifying equitable tolling in this case. The Plaintiffs point to several cases in which courts have used their discretion to find extraordinary circumstances which merit equitable tolling due to litigation-related delays. However, these cases are inapplicable to the situation at hand. For example, in Beauperthuy v. 24 Hour Fitness USA, Inc., No. 06-0715 SC, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007), the court granted the plaintiff's motion for equitable tolling due to delays from arbitration and settlement mediation talks in a parallel case. Id. at *9. These circumstances are not at play in this case. Similarly, in Stickle v. SCI Western Mkt. Support Ctr., L.P., the court granted a motion for equitable tolling because the defendants sought and received a stay pending the outcome of a motion to dismiss the claim. See No. cv 08-083, 2008 WL 4446539, at *21-22 (D. Ariz. Sept. 30, 2008). A motion to dismiss is not currently pending before the Court.

It is true that the Plaintiffs moved for conditional certification on August 25, 2019, and on October 9, 2019, the Court ordered discovery of evidence on the issue of conditional certification. ECF No. 25. Thus, Plaintiffs' Motion for

18

Conditional Certification has been pending and ripe for decision before the Court for several months since the Plaintiffs' initial filing. Notwithstanding this, while "the Court always strives to address motions before it as expeditiously as possible, a less than three monthly delay on a series of complex motions does not constitute extraordinary circumstances warranting the circumvention of Congresses intent with respect to the FLSA." LaFluer v. Dollar Tree Stores, Inc., No. 2:12cv363, 2012 WL 4739534, at *6 (E.D. Va. Oct. 2, 2012). As other courts have pointed out, equitable tolling for unspecified potential plaintiffs without the presence of extraordinary justification should not be permitted. Id.

In light of the Plaintiffs' failure to make a sufficient showing of extraordinary circumstances, misconduct by the Defendant, or defective filings, the Court finds that equitable tolling is not warranted and, thus, Plaintiffs' motion for equitable tolling is denied as to all potential plaintiffs.

### D. Notice to Prospective Class Members

Plaintiffs submitted a proposed notice and consent form to be sent to the opt-in class as part of their Motion to Conditionally Certify. ECF No. 30-9. The City opposes a sixty-day window for putative class members to return their signed consent forms to the Court, suggesting that forty-five days is sufficient. ECF No. 31 at 15. The Court finds that sixty days for putative plaintiffs to

return their signed consent forms for filing with the Court is appropriate for purposes of class certification.

**CONCLUSION**

For the foregoing reasons, the MOTION FOR CONDITIONAL CERTIFICATION AND COLLECTIVE NOTICE (ECF No. 14) will be granted in part and denied in part. The Plaintiffs' Motion to Conditionally Certify the proposed class will be granted; the motion for equitable tolling will be denied; the Plaintiffs' request to provide notice to putative class members will be granted, and Notice will be sent to the potential class members, who shall return their signed consent forms to the Court within sixty (60) days of mailing (if the employee decides to opt in).

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 7, 2020